IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| GAINES MOTOR LINES, INC., | ) | |
| B.A.H. EXPRESS, INC., | ) | |
| FREIGHTMASTER, INC., | ) | |
| DAVID PHILLIPS TRUCKING CO., | ) | |
| H.G. SMITH COMPANY, INC., | ) | |
| TRIANGLE TRANSPORT AND | ) | |
| DISTRIBUTION SERVICES, LLC, | ) | |
| GRAHAM TRUCKING | ) | |
| ENTERPRISES, INC., BIG BEN | ) | |
| TRUCKING, LLC, and SOUTHLAND | ) | |
| TRANSPORTATION COMPANY, | ) | |
| | ) | |
| Plaintiffs/Counter-Defendants, | ) | |
| | ) | |
| v. | ) | 1:09CV302 |
| | ) | |
| KLAUSSNER FURNITURE | ) | |
| INDUSTRIES, INC., SALEM | ) | |
| LOGISTICS TRAFFIC SERVICES, | ) | |
| LLC, and SALEM LOGISTICS, INC., | ) | |
| | ) | |
| Defendants/Counter-Plaintiffs, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| KLAUSSNER FURNITURE | ) | |
| INDUSTRIES, INC., | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SALEM LOGISTICS, TRAFFIC | ) | |
| SERVICES, LLC, SALEM | ) | |
| LOGISTICS, INC., and | ) | |
| ARK ROYAL CAPITAL, LLC, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

# MEMORANDUM OPINION AND ORDER

**SHARP, Magistrate Judge**

This matter comes before the Court on: (1) the summary judgment motion filed by Defendant Klaussner Furniture Industries, Inc. (Klaussner) (Docket No. 76); (2) the motion for partial summary judgment as to liability filed by Plaintiffs (Docket No. 74); and (3) the motion to strike filed by Defendant Klaussner (Docket No. 80). The parties have consented to the exercise of jurisdiction by the undersigned. (Docket No. 96.) For the reasons that follow, Defendant Klaussner's motion for summary judgment will be granted. The motion for partial summary judgment filed by Plaintiffs will be denied. Defendant Klaussner's motion to strike portions of the affidavit of Colin Barrett will be dismissed as moot.

# FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are federally licensed motor carriers who transported furniture from Defendant Klaussner's furniture factory in North Carolina to various cities across the country. (Docket No. 59 ("Second Am. Compl.") ¶¶ 10, 16, 22.) Prior to the time period here in issue, Klaussner had contracted directly with Plaintiffs to transport its furniture and had paid them directly. (Docket No. 77, Ex. A (Aff. of Doyle Vaughn) ¶ 4.) Beginning in August 2007 and extending until January 2009, Klaussner contracted with Salem Logistics, Inc. ("Salem") to take over Klaussner's transportation business because Salem claimed that it could lower transportation costs and improve customer service. (*Id*. ¶¶ 6-8.) Plaintiffs

seek by this action to recover the costs of transporting shipments of Klaussner furniture during the time period that Salem was handling Klaussner's transportation business.

In the Summer of 2007, Salem sent each Plaintiff a written request for quotes to which each Plaintiff was required to respond before Salem would select it to haul for Klaussner. (*Id*. ¶ 7.) After receiving these quotes, Salem agreed to charge Klaussner uniform rates that were generally higher than the rates quoted by Plaintiffs. (*Id*. ¶ 8.) Klaussner agreed to these rates when it signed with Salem the Traffic Services Agreement. (*Id*.) Doyle Vaughn was a Klaussner employee who had arranged for transportation of shipments of Klaussner furniture on motor freight carriers during the time Klaussner worked directly with carriers. (*Id*. ¶ 4.) He avers in an affidavit that he "personally spoke with each" Plaintiff and "explained that the selection and payment of carriers for Klaussner loads would be handled by Salem going forward." (*Id*. ¶ 10.) He also states that Plaintiffs "were told that their invoices were to be sent to Salem in Winston-Salem and not to Klaussner in Asheboro." (*Id*.) Vaughn states that he told Plaintiffs, as of the end of September, 2007, that he no longer worked for Klaussner and that Salem had hired him. (*Id*.)

The request for quotes sent to Plaintiffs by Salem contained a letter dated July 12, 2007, from Ralph Raymond, Vice President of Logistics for Salem Logistics, Inc. (Aff. of Doyle Vaughn, ¶ 7 & attached Ex. 1.) This letter states that all "freight payment responsibilities" regarding Klaussner shipments will be "directly managed by Salem Logistics." (*Id*., Ex. 1.) Along with that letter was a memo on Klaussner letterhead signed

by Chuck Miller, Vice President–Supply Chain, which states that Klaussner has selected Salem Logistics as its third-party logistics company and that "[a]ll freight bills should be designed as a third party payment" and be sent to "Klaussner Furniture, c/o Salem Logistics, Inc." in Winston-Salem, N.C. (*Id.*, Ex. 2.)

For each load that Salem assigned to a Plaintiff, Salem sent the carrier two documents: (1) a "Carrier Pickup and Delivery Schedule," and (2) a "Confirmation of Contract Carrier Verbal Rate Agreement." (Aff. of Doyle Vaughn ¶ 11.) The Pickup and Delivery Schedule lists the "Bill-To & Contact Information" as Salem Logistics, Inc. in Winston-Salem, N.C. (*Id.* & attached Ex. 4.) It provides the addresses and other information for pick up and delivery of the load. (*Id.*) The Confirmation of Agreement is signed by the carrier and Salem. (*Id.*, Ex. 3.) This agreement sets the rate at which the shipment will move. (*Id.*)

Plaintiffs, for their part, allege that the bills of lading for each shipment are the contracts which bind Klaussner to pay it for the cost of shipments. (Docket No. 75 at 2 ("The bills of lading are valid and binding contracts between Plaintiffs and Klaussner.").) Plaintiffs agree that each bill of lading for the disputed shipments contains two "non-recourse clauses." (*Id.* at 14 ("While the subject bills of lading have a signed 'nonrecourse' section in each bill of lading," language printed on the bottom of every page of its bill of lading contains additional non-recourse language); Docket No. 77, Ex. B & attached bill of lading.)

On each bill of lading in issue, the non-recourse language printed within the section which describes the shipment states as follows:

> SUBJECT TO SECTION 7 OF CONDITIONS, IF THIS SHIPMENT IS TO BE DELIVERED TO THE CONSIGNEE WITHOUT RECOURSE ON THE CONSIGNOR, THE CONSIGNOR SHALL SIGN THE FOLLOWING STATEMENT: THE CARRIER SHALL NOT MAKE DELIVERY OF THIS SHIPMENT WITHOUT PAYMENT OF FREIGHT AND ALL OTHER LAWFUL CHARGES. Klaussner Furniture Industries, Inc. By: CAM SMITH

(*Id.*, attached bill of lading.)

In addition to the above language, each page of the bill of lading contains roughly the same language at the bottom in footnote-like form. (*Id.*) The only differences are that the language in the footnote includes the phrase "of the UCC" immediately following the word "conditions," and that provision is not signed in any manner by Klaussner. (*Id.*)

Most of the bills of lading also were marked by Klaussner as "pre-paid." (*Id.*) Each bill of lading contains language stating that "freight charges are prepaid unless marked otherwise." (*Id.*) The bills have an area to mark beside "Prepaid," "Collect," and "3rd Party." (*Id.*) Although most of the bills of ladings at issue were marked "prepaid," "very occasionally" all three blanks were not marked. (Docket No. 75, Ex. E ¶ 31 (Aff. of Colin Barrett).)

## DISCUSSION

### A. <u>Summary Judgment Standard</u>

Summary judgment is appropriate only when no genuine issue of material fact exists. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). A genuine issue of fact exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-

moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court considering a motion for summary judgment must view all facts and draw all reasonable inferences from the evidence before it in a light most favorable to the non-moving party. (*Id.* at 255.) The proponent of summary judgment "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick County Comm'rs,* 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the movant carries this burden, then the burden "shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." (*Id*. at 718-19 (citing *Anderson*, 477 U.S. at 247-48).) A mere scintilla of evidence supporting the non-moving party's case is insufficient to defeat a motion for summary judgment. *See, e.g., Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994); *see also Anderson*, 477 U.S. at 248 (non-moving party may not rest upon mere allegations or denials.)

B.  **Defendant Klaussner's Motion for Summary Judgment**

Defendant Klaussner moves for summary judgment on all of Plaintiffs' claims against it in Plaintiffs' second amended complaint. (Docket No. 76.) Klaussner contends that

Plaintiffs cannot recover freight charges as a matter of law because Klaussner signed[1] a non-recourse clause in the bills of lading. (*Id.*)

It is well settled that a signed non-recourse clause generally relieves the shipper/consignor of liability for freight charges to the carrier if the carrier delivers the shipment to the consignee before it receives payment and without a stipulation of payment following delivery. *Illinois Steel Co. v. Baltimore & O.R. Co.*, 320 U.S. 508, 514 (1944) ("The obvious purpose and effect of the non-recourse clause is to relieve the shipper from liability for freight charges, upon delivery to the consignee."); *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 479 (9th Cir. 2000). The plain language of the non-recourse clause that Klaussner signed for each bill of lading is consistent with this conclusion.

Plaintiffs make several arguments in attempting to avoid the apparent effect of the non-recourse clause at issue in this action. Plaintiffs argue that because the bills of lading were marked both "prepaid" and "non-recourse," Klaussner is still required to pay the "line haul charges," or normal freight charges for a shipment. (Docket No. 79 at 5-9.) A

---

[1] Under the North Carolina UCC, "sign" means, with present intent to authenticate or adopt a record, to execute or adopt a tangible symbol or to attach to or logically associate with the record an electronic sound, symbol, or process. N.C. Gen. Stat. § 25-7-102(11); *see Carna v. Bessemer Cement Co.*, 558 F. Supp. 706 (W.D. Pa. 1983) (consignor "signed" a non-recourse provision by preprinting its name in the space provided for consignor signature thus avoiding liability for transportation charges). Therefore, in this case, Klaussner "signed" the non-recourse provision on the bills of lading by preprinting its signature and that of its employee.

"prepaid" notation on a bill of lading, when the consignee has already paid its bill to the consignor, means that "the consignee is not liable to the carrier for payment of the freight charges."[2] *C.A.R. Transp. Brokerage Co.*, 213 F.3d at 479.

Plaintiffs rely upon *Jones Motor Co. v. Teledyne, Inc.*, 732 F. Supp. 490 (D. Del. 1990). In that case the bills of lading were marked as "prepaid" and "non-recourse." The court interpreted the *Illinois Steel* case to support the conclusion that a bill of lading marked both "prepaid" and "non-recourse" binds the shipper to pay for the "line haul" freight charges but not to pay for any accessorial charges.[3] *Id*. at 492. The court reasoned that the "non-recourse" designation did not shield the shipper from paying the shipping charges because "the express terms of the tariff prohibit a third-party billing situation if the non-recourse clause is signed." *Id*. at 493. The tariff the court refers to is the "MAC Tariff 110-I" which

---

[2] In this case, by reason of the agreements between the Plaintiffs and Salem, it is beyond dispute that Plaintiffs knew there was no actual "prepayment" of the freight charges by any party. The only evidence of the understanding of "prepaid" by any party is that offered by Klaussner. Klaussner's CFO testified upon deposition that "prepaid" as marked on the bills of lading meant that the "bill of lading doesn't tell you who's going to pay. It's just telling you who's not going to pay. It's either not the customer who is receiving the good or it's not the shipper. You have to go to another document to determine who's responsible and before Salem, you'd go to a Klaussner contract." (Bryant Dep. At 69, 108-09.) *See Mediterranean Shipping Co. v. Elof Hansson, Inc.*, 693 F. Supp. 80, 85 (S.D.N.Y. 1988) ("prepaid" means either that freight charges have actually been paid or that a carrier has extended credit to a party that it expects to pay under the terms of that credit arrangement.) Plaintiffs offer no evidence of their understanding of "prepaid." Instead, they offer expert evidence that is flawed because it is not grounded upon any evidence of any Plaintiff's actual understanding of "prepaid." Accordingly, the Court has no occasion to select between the testimony of Klaussner's expert, who explains why the "prepaid" and "non-recourse" clauses are not inconsistent and that of Plaintiff's expert who opines that they are inconsistent.

[3] There are no accessorial charges at issue in the present action.

set the standards "with respect to whether the bills of lading can be construed to be a 'Third Party Billing.'" *Id*. That tariff required the shipper to guarantee to pay the shipping charges if the third party fails to do so. *Id*. Therefore, the shipper in that case could not shift the responsibility to pay for the shipping charges to a third party because it had signed the non-recourse provision and thus failed to comply with the tariff requirement that it guarantee payment.

In the present case, Klaussner contends that Salem Logistics is the third party responsible for payment of all of the shipping charges that Plaintiffs are seeking to collect. (Docket No. 77 at 11-12.) Plaintiffs do not contend that a tariff similar to the one in *Jones Motor Co*. applies in this case. Moreover, the Supreme Court in *Illinois Steel* did not consider whether the shipper in that case was obligated to pay for the "line haul" charges because the shipper had paid those fees prior to the delivery of the shipment. The issue in *Illinois Steel* was whether the shipper was liable for charges "in addition to those which it prepaid at shipment." 320 U.S. at 513. Therefore, to the extent that the *Jones* court relies upon *Illinois Steel* to support its conclusion that its shipper was responsible for "line haul" charges, that reliance is misplaced. Finally, the *Jones* court was not faced with the evidence that appears in this case showing that Plaintiffs had been advised by Klaussner prior to

making the disputed shipments that Salem Logistics would be a third party payer.[4] (Aff. of Doyle Vaughn & attachs.) Accordingly, the *Jones* decision is not persuasive authority in favor of Plaintiff carriers under the circumstances of this case.

Plaintiffs also argue that the non-recourse provision in the bills of lading is ambiguous and that this Court should consider the course of dealing between Plaintiffs and Klaussner prior to the entry of Salem Logistics into their relationship. (Docket No. 79 at 9-12.) Plaintiffs point out that the bills of lading contain two non-recourse provisions: the signed provision and the unsigned provision at the bottom of the bills. Plaintiffs argue that the unsigned provision, with its additional language "of the UCC," is "nonsensical" and thus ambiguous.[5] (*Id*. at 10.) It must be construed against Klaussner, argue Plaintiffs, because Klaussner drafted the bills of lading. This "render[s] the nonrecourse clause unenforceable" according to Plaintiffs. (*Id*. at 11.)

---

[4] Klaussner's marking of the bills of lading as "prepaid" rather than "3rd Party" might introduce some doubt as to whether Salem Logistics was the entity responsible for payment of the shipping charges if it were not for the evidence of record showing that Plaintiffs were placed on notice multiple times that they were to look to Salem for payment. (*See* Aff. of Doyle Vaughn & attachs.) This Court must consider all of the evidence, including the "Confirmation of Contract Carrier Verbal Rate Agreement" and the "Carrier Pickup and Delivery Schedule" which accompanied each load. *See Jackson Rapid Delivery Serv., Inc., v. Thomson Consumer Elecs., Inc.*, 210 F. Supp. 2d 949, 953 (N.D. Ill. 2001) (looking beyond bills of lading to determine responsible party for unpaid transportation charges). When all of the evidence is considered, Klaussner's failure to mark the bills "3rd Party" does not amount to a material issue of fact precluding summary judgment.

[5] Klaussner concedes that Section 7 of the UCC does not address liability for freight charges. (Docket No. 84 at 8.)

The Court finds that the Plaintiffs' argument is not persuasive on this point. Plaintiffs attempt to show an ambiguity by use of a provision which, by the terms of the bill of lading, was never in effect because it was not signed. The "nonsensical" language at the bottom of the bill of lading is, in fact, a nullity since it was never given legal effect through inclusion of a signature by the shipper as required by the express provisions of the portion of the bill of lading upon which Plaintiffs rely.

Plaintiffs also argue that the course of dealing between the parties shows that Klaussner is primarily liable for the freight charges. (Docket No. 79 at 11-12.) Plaintiffs point out that Klaussner used the same bills of lading both before and after Salem Logistics was hired as Klaussner's broker. Because prior to this event Klaussner paid Plaintiffs for the freight charges, Plaintiffs contend that Klaussner is liable following Klaussner's hiring of Salem.

Although Klaussner apparently did not attempt to enforce the non-recourse provision of the bills of lading until after it contracted with Salem Logistics, Plaintiffs offer no legal argument as to why Klaussner may not enforce the provision after Salem was hired. Indeed, the most recent course of dealing shows that Plaintiffs sent invoices to and were paid by Salem, not by Klaussner. (*See* Docket No. 75, Ex. F (Dep. of David Cameron Smith) at 17-44 (Klaussner employees received information from Plaintiffs that Salem was late in paying freight charges for Klaussner shipments); Docket No. 77, Ex. B (Dep. of O.C. Rabun of B.A.H. Express, Inc.) (B.A.H. Express had agreement with Salem for payment of freight

charges by certain time).) The entry of Salem as a third-party payer in 2007 changed the relationship between Plaintiffs and Klaussner such that the earlier course of dealing between the parties had no continuing relevance. Therefore, Plaintiffs' reliance upon course of dealing is misplaced and ultimately not persuasive.

Defendant Klaussner's motion for summary judgment will therefore be granted.

C.  **Plaintiffs' Motion for Partial Summary Judgment on Liability**

Plaintiffs have separately moved for summary judgment. (Docket No. 74.) Plaintiffs rely upon cases in which the shipper/consignor failed to protect itself with a non-recourse clause. (*See* Docket No. 75 at 6-11 (relying upon *Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co.*, 513 F.3d 949 (9th Cir. 2008); *Hawkspere Shipping Co. v. Intamex, S.A.*, 330 F.3d 225 (4th Cir. 2003); *Nat'l Shipping Co. v. Omni Lines, Inc.*, 106 F.3d 1544 (11th Cir. 1997); *Strachan Shipping Co. v. Dresser Indus., Inc.*, 701 F.2d 483 (5th Cir. 1983)).) In the *Hawkspere Shipping* action, the Fourth Circuit noted that there was "no evidence that Hawkspere in fact released" the shipper from liability. 330 F.3d at 238. Plaintiffs recognize that Klaussner signed a nonrecourse clause, but argue that the "prepaid" designation "controls and obligates" Klaussner to pay the freight charges to Plaintiffs. (Docket No. 75 at 10.)

This Court above rejected Plaintiffs' argument that *Jones Motor Co.* is persuasive authority in Plaintiffs' favor under the facts of this case. Plaintiffs make no stronger argument on this issue in their own motion than in their response to Defendant Klaussner's

summary judgment motion. Therefore, Plaintiffs' contention that the non-recourse clause is ineffective or ambiguous is rejected based upon the above reasoning. Plaintiffs also make the same argument they made previously with regard to the parties' course of dealing. (Docket No. 75 at 14-15.) That argument is rejected for the same reasons that it was rejected above.

Plaintiffs argue several contentions that are unique to their own motion. (*Id*. at 15-19.) First, Plaintiffs contend that Klaussner is liable under agency theories. The "vital test" in determining whether Salem is an agent of Klaussner is whether the employer has or has not retained the right of control over the contractor as to details. *Hylton v. Koontz*, 138 N.C. App. 629, 636, 532 S.E.2d 252, 257 (2000).

Plaintiffs argue that several factors support the conclusion that Salem was Klaussner's agent. First, Plaintiffs argue that Klaussner "strongly suggested" that Salem use the same motor carriers that Klaussner had used prior to Salem's involvement. (Docket No. 75 at 16.) That conclusion is not supported by cognizable evidence, however. The citation to the deposition of Klaussner employee David Bryant (Ex. C) simply shows that each of the Plaintiffs hauled freight for Klaussner prior to Salem's involvement. Mr. Bryant does not state that Klaussner directed or even suggested these hirings. In any event, a "strong suggestion" is not the same as a "right of control" which is required for an agency relationship to exist.

The other support cited by Plaintiffs for this conclusion is the affidavit of Colin Barrett, Plaintiffs' expert. (*Id.*, Ex. E.) Mr. Barrett states that Salem "did not select carriers, but rather merely adopted the carriers previously utilized by Klaussner." (*Id.* ¶ 20.) Mr. Barrett, however, gives no indication of how he knows that Salem did not select carriers. This is a purely factual statement rather than an expert opinion. Although an expert's opinion may satisfy Fed. R. Civ. P. 56(e)(1)'s personal knowledge requirement if based upon data of which he does not have personal knowledge, this exception to Rule 56(e)'s personal knowledge requirement is not implicated here. *See Huber v. Howard County, Md.*, 56 F.3d 61, No. 94-1651 (4th Cir. May 24, 1995) (unpublished). The fact that the carriers utilized by Salem were the same as those utilized by Klaussner proves nothing about whether Klaussner directed Salem to use those carriers. Therefore, this alleged factor showing an agency relationship creates no triable issue.[6]

The next factor relied upon by Plaintiffs is that Klaussner allegedly directed Salem to divide the loads between motor carriers as Klaussner had done in the past. (Docket No. 75 at 16.) The same authorities cited for the previous factor are relied upon by Plaintiffs. The Bryant deposition affords no support for this conclusion. (*Id.*, Ex. C at 42.) Mr. Barrett, Plaintiffs' expert, again states baldly that Salem "assigned loads in evident recapitulation of

---

[6] This Court recognizes that Charles Miller, Klaussner's vice president of supply chain, testified during his deposition that "Klaussner expressed an interest in giving the existing carriers at the time of the introduction of the Salem relationship a chance to bid to be a carrier under the new relationship." (Docket No. 75, Ex. G at 13.) This falls far short of establishing that Klaussner controlled Salem's selection of carriers, however.

the assignments previously afforded by Klaussner." (*Id*. ¶ 20.) Without any support for this statement, it fails Rule 56(e)'s personal knowledge requirement and does not raise a genuine issue of material fact for trial.

The final factor allegedly showing agency relied upon by Plaintiffs is that Klaussner employee Doyle Vaughn, although he became a Salem employee, sat at the same desk at the Klaussner facility that he had always used, continued to report to Klaussner, and continued to seek direction from Klaussner. (Docket No. 75 at 16.) Plaintiffs rely upon the deposition testimony of Charles Miller, the vice president of supply chain for Klaussner, who said that Mr. Vaughn used the same desk when he became an employee of Salem. (*Id*., Ex. G at 20.) For the other alleged facts, Plaintiffs again improperly rely upon the affidavit of their expert, Mr. Barrett. (*Id*., Ex. E ¶ 26.) The only established fact, that Mr. Vaughn used the same desk, is not sufficient to create a genuine issue of material fact of agency.

Plaintiffs also argue that Defendant Klaussner is liable for the freight charges because Salem had apparent authority to contract on Klaussner's behalf. (Docket No. 75 at 17.) An apparent agency is created where a person "represents or permits it to be represented that another person is his agent" when no actual agency exists. *Phillips v. Rest. Mgmt. of Carolina, L.P.*, 146 N.C. App. 203, 217, 552 S.E.2d 686, 695 (2001).

Plaintiffs rely on the fact that the "Mutual Nondisclosure Agreement" and a "Fuel Surcharge Addendum" were sent to Plaintiffs by Klaussner and Salem with both of their company logos on them. This supposedly led Plaintiffs to believe that these parties were

acting in tandem. (*See* Docket No. 75 at 17.) The mutual nondisclosure agreement pertains to the nondisclosure of information such as that relating to "furniture products, methodologies, pricing, [and] road map." (Docket No. 77, Ex. A attach.) Plaintiffs fail to explain how they relied upon any assertion of Klaussner in this document which reasonably led them to believe that Klaussner was representing that Salem was its agent, especially as to the payment of freight charges. The dual logos are reasonable given that the document seeks to restrict the flow of information that Klaussner would have an interest in protecting such as products and pricing, and the contract is made with Salem.

The fuel surcharge addendum is basically a chart listing the specific surcharge per mile when the fuel index is within certain ranges. (*Id*.) The agreement is signed by representatives from Salem and the trucking company. (*Id*.) It is not apparent why the logo of Klaussner appears on this document other than, as Klaussner points out, the trucking companies were to be carrying Klaussner's shipments. (Docket No. 82 at 19.) The content of this agreement says nothing about Salem's ability to bind Klaussner for anything including payment of freight charges.

Plaintiffs have failed to show that there is a genuine issue for trial on whether Klaussner represented that Salem was its agent.

Plaintiffs next contend that Salem is liable for breach of a contract between Klaussner and Salem, of which Plaintiffs were third-party beneficiaries. (Docket No. 75 at 18.) In order to benefit as a third-party beneficiary, Plaintiffs must show that the contract was

executed for its direct, not incidental, benefit. *Country Boys Auction & Realty Co. v. Carolina Warehouse, Inc*., 180 N.C. App. 141, 146, 636 S.E.2d 309, 313 (2006). A person is a direct beneficiary if the contracting parties intended to confer a legally enforceable benefit on that person. *Id*. It is not enough that the contract, in fact, benefits the third party if, when the contract was made, the parties did not intend to benefit the third party directly. *Id*. The contract is construed strictly against the party seeking enforcement. *Id*.

Plaintiffs do not specifically identify the contract upon which they base this claim. They point to the parties' third-party complaint and answer to identify the contract, but the cited exhibits do not identify the contract. (Docket No. 75 at 18.) Klaussner identifies the contract as the Traffic Services Agreement it executed with Salem. (Docket No. 82 at 20.) Plaintiffs contend that the "entire impetus of the contract was to grant Salem authority to contract with motor carriers, such as Plaintiffs, on behalf of Klaussner." (Docket No. 75 at 18.) This meager showing does not create a genuine issue of material fact for trial. Plaintiffs do not specifically point to any language in the contract or any circumstances surrounding the making of the contract which show that the parties intended to confer a legally enforceable benefit on Plaintiffs.

For these reasons, Plaintiffs' motion for partial summary judgment will be denied.

## Conclusion

For the foregoing reasons, **IT IS ORDERED** that:

(1) Defendant Klaussner's motion for summary judgment (Docket No. 76) is **GRANTED.**

(2) Plaintiffs' motion for partial summary judgment as to liability (Docket No. 74) is **DENIED**.

(3) Defendant Klaussner's motion to strike (Docket No. 80) is **DISMISSED AS MOOT.**

(4) The case is ready to be set for trial as to remaining claims that arise under the pleadings. Within 30 days of this Order, the parties shall identify and list all claims that remain for determination.

/s/ P. Trevor Sharp<br>United States Magistrate Judge

Date: March 30, 2011